# CHARLESTON.

The Winona National Bank *v.* Brackens Creek Coal Land Company *et al.*

The Winona National Bank *v.* R. H. Boone *et al.*

The Winona National Bank *v.* J. D. Boone Coal Company *et al.*

(Nos. 6715, 6716, 6716-A)

Submitted September 9, 1930.    Decided September 16, 1930.

*Hubard & Bacon* and *W. L. Lee,* for defendant in error.
*M. L. Jarrett* and *Dillon, Mahan & Holt,* for plaintiff in error.

Woods, Judge:

W. F. Boone prosecutes error from three several judgments on a like number of promissory notes in each of which the circuit court of Fayette county found him liable under the

endorsement "Boone Land Company, by James D. Boone, treasurer." All knowledge of the notes and authority to use the so-called partnership name as an accommodation endorser are denied.

The Winona National Bank was payee in each of these $4,000.00 notes. James D. Boone was the original maker of the note in case No. 6715. On October 1. 1928, a note, signed Brackens Creek Coal Company, by James D. Boone, treasurer, as maker, was substituted. This latter note bore the endorsement Boone Land Company, by James D. Boone, treasurer.

The notes in cases Nos. 6716 and 6716-A, respectively, were given in 1923. The former was originally signed W. H. Boone Estate, by Jas. D. Boone, treasurer, as maker, with James D. Boone as endorser; the latter, J. D. Boone Coal Company, by James D. Boone, President, as maker, and James D. Boone and D. W. Boone, as endorsers. Sometime prior to 1928 an additional endorsement, Boone Land Company, by James D. Boone, treasurer, was added to both of said notes.

The substitution in the case of the first note and the additional endorsements on all three notes were made after the bank had insisted that they be paid or additional security furnished.

The note in the first case was clearly a personal loan. The money secured by W. H. Boone Estate was paid out by check to Jas. D. Boone, and that of the J. D. Boone Coal Company, a corporation, was paid out by one check to Fayette County National Bank. From the records in these cases, it clearly appears that the Boone Land Company never received any benefit from the notes. In fact the bank admits that it was an accommodation endorser.

The principle is firmly established in our jurisprudence that whenever the ordinary conduct of the business of a firm involves the use of negotiable paper, each partner is agent for all to sign the firm name to such paper and to negotiate it. While such authority may be implied if the firm is a trading or commercial partnership, the law seems to be equally well settled that a member of a non-trading firm in general has no such authority, although the instrument is for a firm debt, unless expressly authorized, or unless the authority to bind the

firm by negotiable instruments may be implied from the circumstances, as where it is necessary for carrying on the business, or it is customary in similar partnerships, and such paper is issued, accepted, or endorsed by the managing partner, or where it may be implied from the actual course of business pursued by the particular partnership, and such paper is issued, accepted, or endorsed by the managing partner. 47 C. J. 866. Our court, in a case involving the liability of a mercantile partnership on an accommodation endorsement, held that the endorsement by a partner in the name of the firm, of paper not belonging to the firm, which is in effect lending or giving the credit of the firm, carries with it the presumption that the partner making it was not authorized so to do. *Tompkins & Maden* v. *Woodyard,* 5 W. Va. 216.

In the present cases nothing is shown tending to connect the Boone Land Company up with the original transactions. At the time the money was credited to the several accounts, and checked out by James D. Boone, no mention was made of Boone Land Company. The first time that this so-called partnership came into the picture was when the bank asked for payment of the several notes at maturity or additional security. From such a state of facts, and the consequent presumptions arising therefrom, it became the duty of the bank to ascertain whether or not the other members of the partnership had authorized such use of the firm name. However it did nothing until in 1928, and then only at the instance of the Bank Examiner. On April 30, 1928, the bank directed a letter to James D. Boone, saying therein that its attorney had advised that the endorsement of Boone Land Company ''which is an accommodation'' endorsement should be authorized by the partners, and that the directors insist that such authority should be secured.

James D. Boone thereupon wrote to his two brothers, W. F. Boone and J. A. Boone, calling their attention *in a way* to the bank's demand, and enclosed a power of attorney for them to execute and return to him. This power of attorney, prepared by James D. Boone, is as follows:

"Fayetteville, W. Va.
June 2, 1928.

Know all men by these presents:

That J. A. Boone, W. F. Boone and Jas. D. Boone are partners, and doing business under the trade name of Boone Land Company, and

Whereas Jas. D. Boone has been handling, collecting, paying taxes, and doing all other things necessary and needful for the benefit of said Boone Land Company, for the last thirty years,

Now we, the partners of said partnership, do fully authorize and direct that Jas. D. Boone continue as in the past, and we hereby authorize him to collect royalties, disburse same, borrow money and indorse notes, if need be, and if in his judgment he should do so, pay taxes, and do other and all such things as in his judgment may be proper and right, the same as he has done in the last thirty years.

Witness our hands and seals:

(Seal) Boone Land Co.
(Seal) W. F. Boone
(Seal) J. A. Boone"

While the bank seeks to read authority to endorse accommodation paper into the instrument, we are quite unable to see any implication arising from the language alone, suggesting that James D. Boone possessed this extraordinary agency power, and we are to remember that there is nothing in the records showing any extraneous circumstances touching the nature of the business he was supposed to, or did, transact for the Boone Land Company, from which any such implication can be drawn. "Commercial paper, such as bills, notes, and checks, passes current to a limited extent like money, and accordingly power to an agent to execute or indorse it is to be strictly limited, and will never be lightly inferred, but ordinarily must be conferred expressly. The most comprehensive grant, in general terms, of power to an agent, *conveys no power to subject the principal to liability upon such paper,* unless the exercise of such power is so necessary to the accomplishment of the agency that such intent of the principal must be presumed in order to make the power effectual." 2 C. J. 636. This statement of the law is amply supported by the

decisions. 1 Dan. Neg. Inst. (6th ed.) sec. 292; Tiedeman, Com. Paper, sec. 77; 31 Cyc. 1381.

The mere fact that a power of attorney was prepared, executed and produced by the agent subsequent to the bank's demand upon him for evidence of authority to make accommodation endorsements on behalf of the partnership will not warrant us in reading such authority into it. The bank had no assurance whatever that their request to James D. Boone had been brought home to his principal. Then how could W. F. Boone be estopped to deny an authorization to make accommodation endorsement of the firm name? He says that he had no knowledge that the firm name was being used for such purpose. And the nature of the business was clearly not such as would permit an agent to bind his principal by making such endorsements.

Whether the stipulation of counsel to hear the last two cases together amounted to an agreement to consolidate, it appears from the record that it was so construed by the court. We therefore see no merit in the plaintiff bank's attack on the bill of exceptions.

The judgments in the three cases must be reversed, and judgment entered here for the defendant, W. F. Boone in each.

*Reversed; judgments entered.*